The next case is No. 261171, Boston Scientific Corp. v. Stryker Corporation. Okay, Mr. Wolf? May it please the court. The district court here fundamentally misunderstood the claims at issue in this case. In Claim 16, a stylet is put through an introducer with the pointed tip of the stylet extending just beyond the end of that introducer. The combined device is then punched through a thick, hard pedicle, then into a hollow area, and then through a millimeter-thick shell of cortical bone, exposing cancellous bone within that shell. The stylet is removed, and the introducer can now be used as a tunnel for a flexible instrument to work its way in a curved path through this softer cancellous bone. Okay, so we're concerned with the meaning of reaches. Yes, Your Honor. And if you look at the dictionaries, actually the predominant dictionary definition favors the opposing side. But there are perhaps definitions which would favor you. But I don't understand how you can contend that the plain and ordinary meaning favors you when there seems to be ambiguity. Your Honor, I think the plain and ordinary meaning, even as adopted by the district court, touches or extends to. If you give meaning to the word or, we clearly think under the narrower view, and again, we think the evidence of infringement quite clearly shows that their introducer, they instruct doctors to put their introducer into the cancellous bone. But putting that aside for the moment, certainly they instruct that the introducer extends to the cancellous bone, gets up to the cancellous bone. But I'm asking you about where do you get the plain and ordinary meaning of reaches that supports your definition, because there are different definitions in the dictionaries as to the meaning of reach, some of which say that it has to attain, which would suggest it has to touch or extend to the cancellous bone. Well, of course, this is the lesson of Phillips, right? This is why we don't start with dictionaries anymore. This is why Texas Instruments – Where are we getting the plain and ordinary meaning from then? We're getting it from the claims themselves. We're getting the specification. Let's start with the claims, Your Honor. The claims tell us that the stylet needs to pierce the bone. It tells us the introducer merely needs to enter the pedicle. The claims themselves tell us what reaches mean. There's no requirement that the introducer, unlike the stylet, pierces, let alone gets to the other side of the cortical bone, that millimeter-thick cortical bone. So the claims tell us what reaches means. The specification also tells us what reaches mean. It says – The only two definitions, the only two usages of the word reaches in the specification seems to say it has to get to the cancellous bone, right? They're used in connection with the stylet. Your Honor, I don't believe that there's any meaning of reaches in the specification, unless you do what defendants did, which is kind of beg the question and assume it means exactly what they want. There are two uses of the word reach in the specification, correct? There are actually, I think, four, Your Honor. But those uses seem to contemplate a situation where it actually gets to the cancellous bone. That's, I don't believe, correct, Your Honor. I don't think there's any indication where reaches means touches. I mean, there were talks about different components reaching things. Isn't there a preferred embodiment where the cannula, the introducer, does reach the cancellous bone? Yes, Your Honor, and that is very instructive because that preferred embodiment – and interestingly, this patent has enumerated embodiments, 1 to 31. That preferred embodiment is 18, and that is derivative of, is dependent on embodiment 10. 10 doesn't say that. So it is a species of the genus of reach that you can get to the cancellous bone. But embodiment 10 doesn't have that requirement, the embodiment that 18 depends from. And that just proves our point. We have no doubt that it can get to the cancellous bone. There's no problem with it reaching the cancellous bone. In fact, we think they instruct their doctors to reach the cancellous bone. That's what the evidence shows. But you don't have to reach a cancellous bone. You have to get to the interface. You have to get close enough that the introducer can do its job, and that's exactly what happens here. I'm concerned with how you handled or didn't handle the claim construction issue in the briefing at the district court. You just say, quote, plain and ordinary meaning, don't ever put any meat on those bones. I recognize you opposed their narrower implication that it had to touch. But you don't cite to any intrinsic evidence. You've done more today in five minutes than you did to benefit the district court. And I think in an expedited preliminary injunction setting where the district court just has to make a tentative assessment as to what the claim terms mean, it's very hard to see how it's an abuse of discretion, even if this tentative construction might not end up being the right one. Your Honor, we argued in our opening brief that it was plain and ordinary meaning. But you didn't say what that was. Well, because we thought that the claims themselves indicated what that is. I take your point, though. In our reply brief, we spent 10 percent of our reply brief explaining it doesn't require touching. I would also note that you never gave the district court the benefit of a proposed construction that she could have adopted. True, Your Honor, but at that point, both sides were saying plain and ordinary meaning. And we had a three-hour hearing on calendar that then got taken off calendar. So there were opportunities for both sides to elucidate this that week. You certainly can't say we didn't put it in our brief because we thought we would just tell her in person. Absolutely not, Your Honor. But we had two pages, as I said, and I can point you to those two pages, A12439-441 of the reply brief. They do point to the claim language. They don't even make the specification argument that you've made today, do they? Your Honor, we discussed the specification at length in our opening brief at A5539-40. We have it in the jury or expert report at A292-298. We have it in the Walaszko report and other of our experts at NAICS. Is that in the context of proposing a claim construction? It's in the prospect of the context of talking about what the claimed invention is. So when you are page limited to, I mean, I suppose we could have said look back at what we said five pages earlier. When we're describing the invention in retrospect, we probably should have done that. But there's no dispute that we talked about the purpose, the approach, the novelty of this invention with references to the specification and what it was telling you to do. So, Your Honor, and of course, claim construction is de novo, but the construction the district court operated under frankly doesn't defend us, touches or extends to. If the district court had applied extends to or extends to, we would have been fine. It was changing the or to an and in the middle of the district court's order that caused the mischief. Now, sorry, Your Honor. Well, thank you. I have wondered what extends to is doing in that construction. I'm not sure that, and you may have. You can point it out to me if I missed it, but I'm not sure in your briefing you even said, oh, by the way, don't worry about touches because the district court said extends to and didn't really apply that construction. No, we have multiple places in our brief. If we say that extends to would have been fine with us. We even say the district court changed course by suggesting it's in a footnote. I think it's footnote four of our brief. We don't even know what extends to means. I mean, that on its face is not all that clear. Well, that was, sorry, Your Honor. There are dictionary definitions which say that reaches means that it has to attain. It has to get to a place. There are also dictionary definitions that say, There are potentially different dictionary definitions, but I'm struggling to understand where your plain and ordinary meaning is coming from. It can't be coming from the dictionaries, right? Our plain and ordinary meaning is coming from what is required in light of the function of the claim, what is required of the introducer. The introducer has to get close enough. But it's based on the theory that the purpose is served by a broader construction? It's not the purpose. It's the function. It's the expressed in the claim function. Again, it's the stylet extending from the end of the introducer, that in the claim itself it's the stylet that pierces the bone, not the introducer. For example, if you look at the specification column 11, line 29, where this is one of the couple of instances where the reach is used, this is contemplating it actually gets to the treatment zone, right? Well, first, just to be clear, that's a different device, right? That's the stylet. But I don't understand what the specification is viewing reach as meaning. See, this is really ‑‑ I think this actually helps us, Your Honor, because there it's talking about a zone, a general area. You'll notice later on ‑‑ Answer my question. In the use of the word reach there, it means arrived at, right? It means getting there. Getting up to. But you notice later in that very sentence. No, no, no. Up to doesn't mean up to in that context. It does, Your Honor, respectfully. It does because the rest of that sentence said it is removed and replaced by the treatment device which is delivered to the treatment site T and activated. So you reach the treatment site T under the narrow definition, but under the broader definition you haven't. It says you reach the zone. That's the whole point. You're getting to a zone, not a specific point. As our expert described it as, the interface between the cortical bone and the cancellous bone. You're getting close enough that the stylet can do its job, that it can pierce the bone. And the claim is agnostic as to whether the introducer follows the stylet, that last millimeter. And that's what we're talking about here, just a millimeter. Whether the stylet is followed by the introducer, that final millimeter, or not. I'm confused at this point about your construction position. Yes. I read your brief as, for instance, at page 29, the district court erred in its construction of reaches. Yes. But today it seems that you're saying you're totally fine with a construction of reaches that says touches or extends to. So is the district court construction right or wrong? We can live with it if the or is given force. Now, given the O2 micro situation here below, we've actually put forward a definition because we clearly have a disagreement. But the district court said or, and we could have lived with that under the evidence. I don't think you've argued that to us in the briefing. Respectfully, we have, Your Honor. I believe we've done that. That you can live with or, and that you're not challenging the construction? That, for purposes of the preliminary injunction. We've offered clarifying language below. But you've said that you think you can prove infringement even under the district court's construction. I get that.  Let me ask you this. My understanding is this is an ongoing case. You have claim construction proceeding scheduled. More briefing, maybe a claim construction hearing. Correct?  So why don't we just say this is not an abuse of discretion under the circumstances. You were very unclear about your position below. Somewhat unclear here. And try and get the claim construction straightened out as you go forward. Here's why, Your Honor. We've already lost 20% of the remainder of the life of this patent since the order came down. If you were to come and say, revisit this preliminary injunction order with an eye towards. You can't be saying we should rule for you just because you're injured without concluding that your claim construction is right. You're right, Your Honor. But what you can say is if you're going to adopt the district court's claim construction, then enforce extends to. But more importantly, I would say go with what the specification, the claim say. Well, there's no example in the specification where reaches means anything. Other than that, it attains the cancellous bone. Your Honor. When the claim says. And this is at. The into the cancellous bone. This is at a 73, 747. It says that the introducer reaches a cancellous bone. But then later, it says that the stylet goes into a cancellous bone region. So when something has to go into a cancellous bone, it uses the language into a cancellous bone that is different than reaching the cancellous bone. That's in the very same sentence. So this language here does talk about the assembly, which is including the trocar. Yes. Getting into the cancellous bone. That's exactly right. Okay. The stylet. Where are the examples where it doesn't in the spec? I would say that the fundamental example is that in the claim itself, the stylet pierces the bone. Where in the specification is there an example where the trocar does not get into the cancellous bone? Embodiment 10 by definition, because embodiment 18 is a dependent that says, all right, take 10 and now put the introducer into the cancellous bone. So by definition, embodiment 10 must. Can you show us embodiment 10? Yes, Your Honor. Is this a two horse market that we're talking about? It is, Your Honor. And do the competing products have features that are not present in your product? Not that are relevant, not that overlap the claims. They have slightly different sizes, for example. Okay. We believe that that actually gives our products competitive advantages because they've been flimsier, to use a simple word. But for purposes of the claimed features, they are identical. Your Honor, 18 is at A76, 14, 49. Wait, wait. This is 76. Column 14 is 18? Yes. Correct. And the previous column is the method that it depends from. And how do we read embodiment 10 as being an embodiment where the introducer does not reach into, as in it does not touch, excuse me, cancellous bone? Because there's no requirement that it does. I mean, that's the language. That doesn't get you anywhere. I mean, we're trying to understand where there's support, from your view, of the meaning of reaches. I mean, I recognize that these are embodiments, not claims, which is slightly different. But, Your Honor, under black letter law, if you say a device that does X and then you have a dependent claim that says X goes 10 yards, then by definition the independent claim isn't restricted to 10 yards. It must be broader than that or else the dependent claim is surplusage. Did I pronounce that right? Well, embodiment 10, it's talking about the trocar, which is the introducer, correct?  It says you would insert the trocar into a region of bone near the treatment location. Yes. The trocar having a central channel and opening at its distal tip and delivering a candela. Is the candela different than the trocar? No. Delivering the trocar through said central channel. Oh, no, yes, it is, Your Honor. I apologize. It is. That's a different, yes, that's a different word for the stylet. Which one is the device that you say is the candela in their accused device? The candela comprises the deflectible tip, so it's the third thing you use. You use the introducer, then you use the stylet to pierce the bone, and then you have the curved device that gets into the cancellous bone that actually creates the path to the basal vertebral nerve. Is there anything affirmative in embodiment 10 that one could say supports your contention that the introducer does not have to touch the cancellous bone, or is it just the absence of saying that it has to do so? It's the latter, and you wouldn't expect, I mean, the whole point of this, our whole argument is we don't care whether the introducer gets to the cancellous bone. That's not what needs to happen. The stylet needs to get to the cancellous bone. It needs to get through that millimeter shell. Our theory seems to be that we should construe it your way because it's not necessary that it touch the cancellous bone. It is a limitation that is not required by any language in the claim, the specification, or the extrinsic record. And so reaches should mean, I mean, if I say a jet bridge reaches the plane, whether it's touching the plane or an inch away, we would all agree it's reached. You can step onto the plane. One of the planes that I've been on, it actually touches the plane. Well, Spirit Airlines. It's probably not a good example. I can assure you I've made that step across an inch or two of a gap. Your Honor, there is no reason to overly narrow this claim, and I know my time's well expired. I just want to say that under any theory, the physician training video, the biocompatibility assessment, and the medical evaluation presentation unambiguously say, and this is the last thing before I sit down, physician training video, twice notes, quote, final placement of the access cannula will be just inside the posterior wall of the vertebral body. We know our placement is safe as long as the tip of our cannula is inside the posterior wall. That's at A12479. Dr. Ledet, their expert, admitted, quote, inside the posterior wall is cancellous bone, end quote. That's at A12531.  I think we're out of time. Thank you. Two minutes or so. Mr. Love. Good morning. May it please the Court. Nathaniel Love, First Striker. I want to start with the discussion that we were just having about this Embodiment 10 as compared to Embodiment 18 at Appendix 76. So the reason that exercise was so difficult, of course, is that it is not anywhere in the briefs. This is an argument they're raising for the first time today here in this courtroom. They've never mentioned Embodiment 10. Judge Stark, as you're questioning, rightly recognized this Embodiment 10 references inserting a trocar, and that is the introducer in the claim, into a region of bone near the treatment location. The treatment location in this patent is the base of the BVN. A region of bone near the treatment location is the cancellous bone that surrounds that BVN. I recognize this argument that was not made before, but is there any evidence that near the treatment location only includes the cancellous bone? How do I know it doesn't include the pedicle and the cortical shell? Well, Your Honor, if you don't have an answer, I totally understand. I do have an answer, an anatomical answer. There's a diagram that the district court relied on. It's an annotated version of an image from a striker document. It looks like this, and for the record, I'm at Appendix 11913. This is a diagram of a vertebra that their expert, Mr. Drury, annotated. And the reason why it's helpful is it shows in orange here, this is the cancellous bone. That's all the way inside the vertebral body. And then we have here the posterior wall that he labeled in purple. The district court references the purple color. You can see it in color here in this image. So this is cortical bone. We're treating the base of the BVN here. That's surrounded by cancellous bone. So this species-genus argument. Okay, but I get all that, and I think the answer is you can't point to anything evidence in the record because this is a whole new argument, and that's totally fair. But when embodiment 10 says near the treatment location, how do I know that that's not even skin on the outside? I mean, to me, that's possibly near. So I understand that question. These terms of degree with like near or proximity to, even things that show up like immediately adjacent to or immediate vicinity of, without any guideposts, we don't really know what that means. Of course, this isn't claim language, right? This is this description of an embodiment. And I do want to go to the claim language because contrary to what counsel was arguing, the claim language, the words that were used to describe his invention, tell us a lot about what reaches means. The full context is, quote, inserting an introducer. I'm reading from the claim, Your Honor. So for the record, I'm at Appendix 79, reading from Claim 16. Inserting an introducer through a pedicle of the vertebral body, such that an opening at a distal tip of the introducer reaches a cancellous portion of the vertebral body. So the words that were used to describe what is happening at this step of the method do not reference the stylet tip. They reference the distal tip of the introducer. So counsel said the claim was agnostic as to the position of this instrument. That's directly contrary to what the claim says. This limitation concerns the positioning of a particular portion of this specific instrument, the introducer, with respect to patient anatomy as part of this procedure. And we should take the claim language, take the inventors at their word. This is the invention that they're describing. What does extends to mean in the district court's construction, touches or extends to? That's a great question, and the district court is very helpful on this point. If we go to Appendix 12, where the district court describes the process that she was confronted with in dealing with a term where the parties had argued plain and ordinary meaning but not offered much in terms of evidence, she started with the widely understood meaning of the term reaches. That's the end of the paragraph, the first full paragraph on 12th. And just below that, you see where she cites to Merriam-Webster's. The dictionary defines the term reach to mean, and then she has the two portions, touch or to extend to. Now the next word that begins the next sentence is important. What she says is this is consistent with the court's understanding of the term, that the introducer's opening reaches a site when it, not some other component, not some other portion of the introducer, touches or extends to that site. She's using touches or extends to as two different words or phrases to describe the same concept. I think from reading Appendix 12 you see that she had one concept in mind. It is touching the cancellous bone. If we're thinking about the introducer as an object with some length, it extends to. It's just redundant. It's the same words being used to fully describe the concept. Different words being used to describe the same concept. That's correct. I don't think it's redundant. I think it's a full explanation of what she means by that. Extends to means extends all the way to. Not extends toward or extends in the direction of other ways we might think about the word extends. It extends all the way to. Isn't it true that sometimes reaches does not require touching? Like there's the example of, we're thinking about airports, I guess, where maybe I reach my airplane when I get to the gate, but I'm not touching the plane. I'm waiting patiently to get on it. I think those analogies are not very helpful here because they are references to destinations where people speak about them in a fuzzy and casual way. An airport gate is a great example. Gates are adjacent to one another. They often don't have any dividing line between them. They're just seats. Maybe you'd think you'd arrived at the gate when you can see the gate agents, you can hear their announcements, but maybe you're sort of across the hallway on the other side. This is a fuzzy concept. People talk about it in a casual way that is not consistent with what this patent is about. Again, this patent is about a procedure where we are hammering, malleting these small tools into a patient's spine to attempt to ablate their nerve. The particular positions at which specific portions of the instruments arrive at are important. We know that from Boston Scientific's own documents. This positioning is very important, and a casual concept of reaches close enough, nearby, that's not how we should understand it. That's not the ordinary meaning of reaches. How do you respond to your friend on the other side that said that there was some form of difference between reaches and extends to? I think if you look at what the district court articulated, what the district court was describing was one concept, and reaches meant touches or extends to, as in all the way to, and that's how she used the construction throughout the rest of her opinion. So I think if we're giving credit to the work that the district court was doing, the district court treated it as one concept. There is perhaps a suggestion in their briefs that they think extends to is somehow more favorable to them, but frankly, the way the district court used extends to, it doesn't support their position at all, and she knew what she thought the term meant. She understood what her own plain and ordinary meaning was and applied it to the evidence to conclude they hadn't shown a likelihood of success on infringement. I think at this point they're now trying to go back and say, well, there's an or, and the or has to mean something. We're construing the construction, and what we have the benefit of is the district court's reasoning, which she laid out here, and on the standard review that's before this court on a preliminary construction in the preliminary injunction context, there's no abuse of discretion in the way she treated this claim term and applied it to the evidence that she offered. It is a tentative construction, and you all are engaged in ongoing claim construction proceedings at the trial court. Is that right? That is correct, yes. And are you asking us to resolve definitively what the correct construction of reaches is in the context of this patent? No, Your Honor. We're not seeking any affirmative relief in any way. I think certainly the record that she will be presented with in claim construction may include some additional pieces of evidence that have not been raised in the briefing that's before this court, and the district court may benefit from that. Obviously it's our position that she got this exactly right. We agree with this construction, and we think it's completely correct for all the reasons we've articulated. But we understand the posture of this before you. There hasn't been a full Markman briefing, and of course that's what the district court notes in her opinion. At page 27 of your red brief, you use abusive discretion in conjunction with the claim construction, and you said something similar a moment ago. I just want to make sure I understand what you're advocating as our standard of review. At 27, you say the district court applied plain and ordinary meaning and concluded the opening does not reach unless it touches or extends to. That conclusion, supported by the evidence, is correct and certainly not an abuse of discretion. Are we reviewing her construction for abuse of discretion in this context? So I think if you go back to the previous page in our brief, we cite Sophomore Danik and the Notera case, which involved this idea of a preliminary claim construction, which may happen in a preliminary injunction proceeding. The question that's before you is whether, on this record, it was an abuse of discretion for the district court to deny a preliminary injunction. And for all the reasons we've said in our brief, certainly not. A subsidiary question there might be, did the district court do something in engaging in this preliminary construction that was so significantly askew from this court's view of appropriate claim construction that perhaps it could constitute an abuse of discretion? And the point that we're making on 27 is everybody advocated plain and ordinary meaning. She went with plain and ordinary meaning. The sources that she consulted confirmed that that was correct, claim language, and so on. The exercise she engaged in was not an abuse of discretion. That's what we intended. So during the prosecution, there was a reference called Pellegrino. Yes. And it was distinguished as to the meaning of the word reaches. Does that help you? I confess, Your Honor, I believe the position that the parties took, and I know that Boston Scientific took this position, was that the prosecution history of the patent was irrelevant. We did not advance an argument before the district court or in our brief that the prosecution history with respect to Pellegrino informed the meaning of reaches. Okay. You may be correct that it helps us, but that's not an argument that we have yet advanced, at least not in this court. I want to make a couple other points in response to the arguments that were raised. Another thing that we're hearing for the first time today is this concept of one millimeter. Counsel mentioned this many times to suggest that there was some sort of measurement now of how far our device goes and how close that is to where the construction would require. You won't find one millimeter in the briefs. You won't find it in the record before the district court. This is another argument that's being raised for the first time today. I just wanted to be clear about that. There was a question that you asked, Judge Rina, about the features that differentiate these products. This gets into some of the arguments that were made about irreparable harm, but the record is clear that there are differentiating features between these products, and I want to be careful because some of this gets into information that Boston Scientific has designated as confidential. But if you consult those portions of the brief, and I'll give you the appendix pages rather than read from them. Appendix 11, 749, 750, 753, 759. What you'll find on those pages are charts that compare Stryker's product, Optible 8 BVM, with Boston Scientific's Intracept product, and there are features that our product has that their product does not. Those pages will indicate to you our competitive advantages to Stryker and ones that Boston Scientific views as desirable but that its current product does not have. So as the products are out there in the market, we believe and we believe their own documents admit this. There are features that indicate that our product is superior and that people may choose the product for those reasons. Thank you. Going back to the definition of or the meaning of reaches, their position seems to be that the inventor here absolutely did not care whether the introducer got to cancellous bone or not, and that's why it's essentially silent except for one preferred embodiment. I take it you disagree. What can you point to in the patent itself that shows the patentee actually did care about whether the introducer touched cancellous bone? So the best answer to that really is to start with the claim language, and I don't want to repeat myself by reading it. But there could be some version of a claim like this that just says inserting an introducer and then moves on to describe the rest of the tools and what they do. That's not these claims. These claims have a specific limitation. It says not only where the introducer has to get to, a specific part of the introducer has to reach a cancellous portion of the vertebral body. So the words of the claim are really our best guide. Then there was a question that you asked, Judge Dyke, whether there are any examples that show something less than getting all the way to actually touching cancellous bone, and there are no such examples. The argument they're trying to come up with on the fly is claim 10, sorry, embodiment 10. I don't actually think that even supports their argument, but there's nothing in the specification indicating anything but the introducer getting all the way to and touching cancellous bone. That is the way the inventor described this invention, and there's nothing to suggest that they meant something else. I take it then the answer to my question is if I don't buy it in the claim language, you can't point to anything else in the patent that says it's really important to the inventor that the introducer always touch cancellous bone. There's not an affirmative statement in the patent that says that. I think what we have is the only guidepost we get is what's described as a preferred embodiment where it does reach there. So I don't want to overread a reference to the preferred embodiment, but where the patent gives no indication that something less than that is acceptable and it does confirm that getting into the bone, the cancellous bone, is what's required, I think we take the inventor at their word as to how they describe it. The last point I'll make, there's a very, very brief argument about the non-infringement evidence. I would point the court to the IFUs, to the step-by-step guide, to the sales training, and the district court's conclusion at Appendix 17 that this evidence not only fails to show a likelihood of success on infringement, what she found was it undermined their claim. It showed that we did not instruct anyone to infringe. We ask the court to affirm. Thank you. Thank you, Your Honor. A few housekeeping matters first, Your Honor. You were asking about where we say we were okay with the extends to. I would just point, Your Honor, to our opening brief at Page 36 and our reply brief, Page 4, Note 3, where we say exactly that, that under what we understand extends to, assuming it has different meaning than touches, that we could live with that. Second, counsel just suggested that millimeter is not in the record. That is respectfully incorrect. A8837 is the specific reference in the record to the cortical shell being a millimeter. I would also note that their own expert described the device at A12529, excuse me, the shell, as just a shell. That's the whole point. He also said, their expert, that the stylet tip, quote, and moves the cortical shell out of the way. That's at A12563, thus disabusing any notion of the district court's finding that somehow in all of the infringement evidence that somehow the stylet could get stuck within the shell, that that's what it meant when it said through but not entirely to the other side of. That's just not physically possible. That's inconsistent with the record. Your Honor asked about the standard of a review. Quite clearly under FMC and any number of cases, it is an abuse of discretion to base a decision on an underlying error of law, and collapsing reaches to just meaning touches, just touches, is an error of law. Reaches was introduced here to distinguish prior art. Is that right? I don't believe that's true, Your Honor. I don't believe that the notion of reaches was the ‑‑ what was overcoming the prior art was where in the vertebral body the deflectible portion got to. I thought earlier that it was used to distinguish prior art. I don't think that's correct, Your Honor. The last thing I would note, and I would ask this court to just look at column 7, lines 33 through 47 of the patent. And the last paragraph, and this is what I'll conclude with, referring now to figure 4A, the assembly, trocar and straight stylus is advanced through soft tissue to the surface of the bone. Once the proper alignment is determined, the assembly is advanced through the cortical shell of pedicle 138 and into the cancellous interior of the bone. The assembly, it is the stylet that goes through. And when the patentee ‑‑ Including the trocar gets into the cancellous bone, right? That's what it says. No, no. It says the assembly, the tip. Remember, the stylet ‑‑ The assembly includes the trocar. But back. Remember, it's like a straw with a Phillips head screwdriver going through it. The stylet sticks past it. That's said again and again. But my final point is when the patent wanted to say something had to be in the cancellous bone, it knew exactly how to say it, and into the cancellous interior of the bone. That language is not in the claim. We have cases, I think, that say even a substantial question of non-infringement is enough to deny a preliminary injunction. Isn't that what we have here, at least a substantial question as to whether or not there's infringement? Your Honor, if you have heartburn, if any of you have heartburn about the construction, that the notion is broader, we would at least ask you to invite the district court to reconsider whether the preliminary injunction proceeding should be reopened. So much of the opinion is based on that one issue. All three other factors were based on that issue. That if there is concern, at least let the district court know that that last 80% of our remaining life of our patent, we don't have a trial date yet. This patent is going to expire before we get to a permanent injunction. At least let the district court know maybe you should look at this one more time after the Markman proceeding, after you've had a chance to look at the full record. Thank you for your time. Thank you. Thank both counsel and Kate.